1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CLEMON HARDY POTTS                          No.  2:12-cv-02870 CKD

12              Plaintiff,

13        v.                                      ORDER

14   CAROLYN W. COLVIN,
     Acting Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

21   ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

22   summary judgment and grant the Commissioner's cross-motion for summary judgment.

23   BACKGROUND

24        Plaintiff, born May 11, 1954, applied for DIB and SSI benefits on July 30, 2009, alleging

25   disability beginning November 1, 2007.[1]  Administrative Transcript ("AT") 135.  Plaintiff alleged

26   he was unable to work due to medical conditions, sleep apnea, heart problems, swollen feet, and

27   _____

28   [1]       Under the Act, payment of SSI benefits is precluded for any months prior to the month the
     application was filed, regardless of the alleged onset date of disability.

                                               1

1   trouble staying awake at work.  AT 140.  In a decision dated August 22, 2011, the ALJ

2   determined that plaintiff was not disabled.[2]  AT 17-31**.**  The ALJ made the following findings

3   (citations to 20 C.F.R. omitted):

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2.   The claimant has not engaged in substantial gainful activity since November 1, 2007, the alleged onset date.
>
> 3.   The claimant has the following severe impairments: obesity, hypertension, history of polysubstance (cocaine and methamphetamine) abuse in sustained remission, history of mild psychosis secondary to drug abuse, and borderline intellectual functioning.

---

[2]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76;  Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

      The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a less than full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).   Due to his obesity, the claimant cannot climb ladders, ropes or scaffolds.   He cannot work at heights or around dangerous moving machinery.   He is limited to jobs requiring only simple instructions and one-to-two processes.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on May 11, 1954 and was 53 years old, which is defined as an individual "closely approaching advanced age," on the alleged disability onset date.

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2007, through the date of this decision.

AT 19-31.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ improperly rejected the opinion of consultative psychologist Dr. John A. Chellsen; (2) The ALJ erred in finding that the requirements for Listings 12.05B and 12.05C were not met; (3) the ALJ erred in evaluating plaintiff's credibility; (4) the ALJ erred by relying on a vocational expert's response to an incomplete hypothetical; and, (5) the ALJ failed to provide specific and legitimate reasons for rejecting lay evidence – a third-party statement from social worker Lori Thomas.

3

1    LEGAL STANDARDS

2         The court reviews the Commissioner's decision to determine whether (1) it is based on

3    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).  Substantial

5    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

9    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

11   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

12   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

14   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

16   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

17   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

18   administrative findings, or if there is conflicting evidence supporting a finding of either disability

19   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

20   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

21   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22   ANALYSIS

23        A.  Dr. Chellsen's Medical Opinion – IQ Score

24        Plaintiff contends that the ALJ committed error in failing to accord appropriate weight to

25   consultative psychologist Dr. Chellsen's medical opinion.  The weight given to medical opinions

26   depends in part on whether they are proffered by treating, examining, or non-examining

27   professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is

28   /////

1 | given to the opinion of a treating professional, who has a greater opportunity to know and observe

2 | the patient as an individual.  Id.; Smolen, 80 F.3d at 1285.

3 |       To evaluate whether an ALJ properly rejected a medical opinion, in addition to

4 | considering its source, the court considers whether (1) contradictory opinions are in the record,

5 | and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

6 | treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

7 | F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

8 | rejected for "specific and legitimate" reasons, which are supported by substantial evidence.  Id. at

9 | 830.  While a treating professional's opinion generally is accorded superior weight, if it is

10 | contradicted by a supported examining professional's opinion (e.g., supported by different

11 | independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

12 | 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

13 | any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

14 | findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

15 | minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

16 | non-examining professional, without other evidence, is insufficient to reject the opinion of a

17 | treating or examining professional.  Lester, 81 F.3d at 831.

18 |       Dr. Chellsen diagnosed plaintiff with mild mental retardation based on a full scale IQ

19 | of 53, placing plaintiff at or below the first percentile relative to plaintiff's same aged peers,

20 | depressive disorder not otherwise specified, psychotic disorder not otherwise specified,

21 | sympathomimetic abuse/dependence in stable remission, learning disorder not otherwise

22 | specified, and mixed personality disorder.  AT 23, 27, 278.  Plaintiff contends the ALJ

23 | improperly rejected Dr. Chellsen's assessment that plaintiff had a full scale IQ score of 53.  The

24 | ALJ noted that the full scale IQ score as determined by Dr. Chellsen is inconsistent with

25 | consultative psychiatrist Dr. Daigle's opinion that plaintiff's intellectual functioning was in the

26 | low average range.  AT 23, 245-46.  Thus, Dr. Chellsen's findings are contradicted by Dr.

27 | Daigle's opinion and may be rejected for specific and legitimate reasons, which are supported by

28 | substantial evidence.  Lester, 81 F.3d at 830.

1       The ALJ noted that Dr. Chellsen was a private examining psychologist that performed a

2 one-time psychological evaluation of plaintiff, at the request of plaintiff's attorney, on July 7,

3 2011.  AT 23, 27.  In assessing Dr. Chellsen's medical opinion, the ALJ ultimately gave little

4 weight to the validity of the full scale IQ score resulting from his examination of plaintiff

5 primarily because Dr. Chellsen failed to comment on whether this IQ score was considered valid

6 and consistent with the developmental history and the degree of plaintiff's limitation, as required

7 under 12.00(D)(6) of the regulations.[3]  AT 23-24.  The ALJ noted that the validity of the IQ

8 score, as assessed by Dr. Chellsen, was based solely on plaintiff's performance on the Rey

9 Malingering Test.  AT 279.  The ALJ also found that a full scale IQ score of 53 is inconsistent

10 with aspects of plaintiff's hearing testimony, daily activities, and work history.  AT 23.  For

11 instance, although plaintiff testified that he cannot read or write, he reported in an SSA Adult

12 Functional Report and Headache Questionnaire that he could easily follow written instructions.

13 AT 44, 178-187.  The ALJ also considered that although plaintiff testified that he lacked the

14 writing skills to take the written portion of the California driver's license exam, the record

15 contains evidence that plaintiff has a California driver's license, numbered N5485391.  AT 44,

16 223.  Additionally, in a third-party report completed by plaintiff's social worker Lori Thomas, she

17 indicated that she always followed up spoken instructions with written instructions to plaintiff.

18 AT 175.  The ALJ also noted that plaintiff had previously worked full time as a forklift operator

19 from 1994-2005, which is categorized as a semi-skilled job.  AT 51.  The ALJ appropriately

20 considered such work to be consistent with an ability to perform simple routine tasks on a

21 persistent basis.  AT 42, 146-47.

22       Pertaining to the full scale IQ score determined by Dr. Chellsen, plaintiff points out that

23 Dr. Chellsen noted in his report that plaintiff's "performance on the Rey Malingering Test fell

24 above the threshold associated with malingering or deliberately exaggerating one's cognitive

25 impairments which supports the contention that the present results are a valid estimate of his

26

---

[3]  In relevant part, 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00D(6)(a) provides: "since the
27 results of intelligence tests are only part of the overall assessment, the narrative report that
accompanies the test results should comment on whether the IQ scores are considered valid and
28 consistent with the developmental history and the degree of functional limitation."

1   abilities." AT 279. Plaintiff contends this test was not solely relied on by Dr. Chellsen in

2   determining the validity of plaintiff's IQ test results and that numerous comments were made in

3   Dr. Chellsen's report about plaintiff's developmental history and the degree of his functional

4   limitations. The comments relied on by plaintiff, however, are simply recitations by Dr. Chellsen

5   of reports being made by plaintiff. AT 276-279. Thus, the developmental history and the degree

6   of functional limitations noted in Dr. Chellsen's report are not the doctor's own comments on

7   whether the IQ score was considered valid and consistent with the aforementioned history and

8   limitations. As is discussed below, the ALJ appropriately found that plaintiff lacks credibility,

9   which calls into question the validity of the developmental history and functional limitations as

10  reported by plaintiff to the consultative examiner. Dr. Chellsen's notes do not constitute the

11  requisite narrative report. See 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00D(6)(a); see also

12  Brooks v. Barnhart, 167 Fed.Appx. 598, 600 (9th Cir. 2006) (the relevant doctor's report did not

13  make the required narrative report assessing whether the IQ scores are considered valid). Thus,

14  the ALJ properly rejected the full scale IQ score as determined by Dr. Chellsen for specific and

15  legitimate reasons – concerns with the validity of the IQ score and inconsistencies between that

16  score and plaintiff's hearing testimony, daily activities, and work history - which are supported by

17  substantial evidence.

18         B. Listings

19         Secondary to plaintiff's argument that the ALJ failed to accord appropriate weight to Dr.

20  Chellsen's assessment of plaintiff's IQ is plaintiff's contention that an IQ score of 53, along with

21  other factors, establish that plaintiff's mental retardation meets the requirements of both Listings

22  12.05B and 12.05C. The Social Security Regulations "Listing of Impairments" is comprised of

23  impairments to certain categories of bodily systems and/or diseases severe enough to preclude a

24  person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990);

25  20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe as to be

26  irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all

27  the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

28  1985). It is the disability claimant's burden of proving that his or her impairments meet or equal

1   the required elements of a Listing.  Tackett v. Apfel, 180 F. 3d 1094, 1099 (9th Cir. 1999).  If a

2   claimant's impairment or combination of impairments meets or exceeds a "listing," no specific

3   finding is necessary as to the claimant's ability to perform his or her past relevant work or any

4   other jobs.  20 C.F.R. § 404.1520(d).

5          The final responsibility for deciding whether a person's "impairment(s) meets or equals

6   the requirements of any impairment(s) in the Listing" is reserved for the Commissioner.  20

7   C.F.R. § 416.927(d)(2).  The Commissioner will "use medical sources, including [a person's]

8   treating source, to provide evidence, including opinions, on the nature and severity of [a person's]

9   impairment(s)."  Id.  However, a person's "impairment(s) cannot meet the criteria of a listing

10  based on a diagnosis."  20 C.F.R. § 416.925(d).  Thus, Dr. Chellsen's diagnosis of plaintiff's

11  "mild mental retardation" and his assessment of plaintiff's IQ, standing alone, do not establish

12  that plaintiff meets the requirements for Listings 12.05B and 12.05C.

13         The Listings under 12.05 describe intellectual disabilities consisting of a "significant

14  subaverage general intellectual functioning with deficits in adaptive functioning initially

15  manifested during the developmental period," i.e. the onset of the impairment occurred before the

16  individual was age 22.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.  This diagnostic description is

17  a prerequisite that must be met by Listings 12.05A-D, along with the individual requirements for

18  each subdivision.  Listing 12.05B requires a "valid verbal, performance, or full scale IQ of 59 or

19  less."  Listing 12.05C requires a valid verbal, performance, or full scale IQ of 60 through 70 and a

20  physical or other mental impairment imposing an additional and significant work-related

21  limitation of function.

22         The ALJ found that plaintiff "fails to meet the requirements of the diagnostic description

23  because there is no evidence showing [plaintiff] lacked the adaptive functioning to dress, bath

24  [sic], walk, or talk prior to age twenty-two."  AT 23.  Plaintiff argues the diagnostic description

25  does not require that plaintiff lack the ability to dress, bathe, walk, or talk prior to age twenty-two.

26  The ALJ, however, did not solely rely on this reason for finding plaintiff did not lack adaptive

27  functioning prior to age 22.  The ALJ also noted that there is no evidence that plaintiff took

28  special education classes in high school for any reason other than his documented speech

1    impediment and that plaintiff received average grades in high school despite his allegation that he

2    cannot read or write.  AT 23, 209-13.  The ALJ also reiterated that plaintiff's job as a forklift

3    operator is inconsistent with his alleged learning disability.  AT 23.

4           Plaintiff contends the fact plaintiff attended special education classes permits an inference

5    of an onset date for mental retardation before age 22.  Plaintiff's reliance on <u>Reyna v. Astrue</u>,

6    2011 WL 2441906 (E.D. Cal June 8, 2011) and <u>Gomez v. Astrue</u>, 695 F.Supp.2d 1049 (C.D. Cal

7    2010) in support of this contention is misplaced.  In <u>Reyna</u>, not only did the plaintiff attend

8    special education classes, but he also failed all of those special education classes except wood

9    shop, dropped out in the ninth grade, and held a series of menial positions in which he had

10   difficulty following directions.  <u>Reyna</u>, 2011 WL 2441906 at *6.  In <u>Gomez</u>, the plaintiff attended

11   special education classes, dropped out in the ninth grade, never obtained any other education or

12   job training, and there was evidence in the record of a long history of teachers' comments noting

13   that his performance in school warranted special class placement.  <u>Gomez</u>, 695 F.Supp.2d at

14   1060.  These factual scenarios stand in stark contrast to the evidence of record in the instant

15   action.  As the ALJ noted, there is no evidence that plaintiff was in special education classes for

16   any reason other than his speech impediment, plaintiff graduated from high school, there is no

17   record of plaintiff failing a single class, and plaintiff went on to perform a semi-skilled job as a

18   forklift operator for many years.  Therefore, the ALJ's finding that plaintiff did not meet the

19   diagnostic requirement of Listing 12.05 is based on substantial evidence.[4]

20          C.  <u>Plaintiff's Credibility</u>

21          Plaintiff asserts that the ALJ erred in the evaluation of his credibility.  The ALJ found

22   plaintiff not fully credible.  AT 28.  The ALJ determines whether a disability applicant is credible,

23   and the court defers to the ALJ's discretion if the ALJ used the proper process and provided

24   proper reasons.  <u>See</u>, <u>e.g.</u>, <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is

---

[4]        Assuming arguendo plaintiff did meet the diagnostic description, plaintiff fails to establish
that the requirements of either Listing 12.05B or Listing 12.05C are met.  As discussed above, the
ALJ properly rejected the assessment of plaintiff's IQ score of 53.  Plaintiff cannot therefore meet
Listing 12.05B.  With respect to Listing 12.05C, the ALJ properly rejected the IQ scores of 61-70
recorded in plaintiff's school records because there is no evidence that such tests from which the
scores were derived were administered by a qualified specialist.  AT 24, 207.

1   critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871,

2   873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring

3   explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

4           In evaluating whether subjective complaints are credible, the ALJ should first consider

5   objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

6   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

7   then may consider the nature of the symptoms alleged, including aggravating factors, medication,

8   treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

9   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

10  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

11  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

12  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

13  01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

14  effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

15  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

16  treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

17  in determining whether the alleged associated pain is not a significant nonexertional impairment.

18  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ may rely, in part,

19  on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

20  1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

21  (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

22  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

23  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

24          In finding plaintiff not fully credible, the ALJ noted that plaintiff testified that he could

25  not read, write, or perform basic mathematical calculations and that he was unable to take the

26  California driver's license exam.  AT 28.  The ALJ considered the inconsistencies of plaintiff's

27  testimony with the evidence in the record that plaintiff reported he could easily follow written

28  instructions, plaintiff's social worker always issues plaintiff written instructions, and evidence

1    that plaintiff has a California driver's license.  The ALJ also noted that plaintiff enjoys playing

2    cards and dominoes on a regular basis, indicative of an ability to perform simple mathematical

3    evaluations.  AT 23, 245, 276.  The ALJ also discounted plaintiff's credibility because of non-

4    compliance in taking medications for what plaintiff alleged was a disabling condition.  AT 28,

5    140, 260-64.  In sum, the ALJ set forth ample reasons to find plaintiff's testimony warranted less

6    than full credibility.  The ALJ used the proper process to evaluate the evidence in the record and

7    provided clear and convincing reasons for finding that plaintiff's testimony was less than fully

8    credible.

9         D.  Vocational Testimony

10        Plaintiff argues that the ALJ failed to include all of plaintiff's limitations in the

11   hypotheticals posed to the vocational expert, whose testimony was relied on by the ALJ in finding

12   there were a significant number of jobs which plaintiff can perform.  Hypothetical questions

13   posed to a vocational expert must set out all the substantial, supported limitations and restrictions

14   of the particular claimant.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a

15   hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the

16   national economy the claimant can perform has no evidentiary value.  DeLorme v. Sullivan, 924

17   F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical

18   questions, based on alternate interpretations of the evidence, the hypothetical that ultimately

19   serves as the basis for the ALJ's determination must be supported by substantial evidence in the

20   record as a whole.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

21        The ALJ posed the following hypothetical to the vocational expert:

22        I want you to consider a 57-year-old individual educated to the
         twelfth grade with [past work as a laborer in stores and forklift
23       operator].  Further consider that this individual is capable of lifting
         50 pounds occasionally, and 25 pounds frequently.  He's capable of
24       standing and walking in combination for at least 6 hours in a work
         day, and capable of sitting at least 6 hours in a work day.  Due to
25       his obesity, should not be required to climb ladders, ropes, or
         scaffolding, should not work at heights or around hazardous
26       machinery.  Mentally, he would be limited to work involving
         simple instructions and one and two step processes.
27

28   AT 51.  Plaintiff argues that the ALJ did not provide reasons for rejecting the functional

11

1    limitations set forth by Dr. Chellsen and failed to include Dr. Daigle's assessment that plaintiff

2    was moderately limited in his ability to adapt to stresses common to a normal work environment.

3    As discussed above, the ALJ properly rejected Dr. Chellsen's opinion as inconsistent with the

4    evidence of record.  AT 29.  The ALJ also properly rejected Dr. Daigle's opinion regarding

5    adaptation to work stressors as inconsistent with plaintiff's activities of daily living and current

6    work at a homeless shelter.  AT 29.  Plaintiff's limitations in concentration, persistence, or pace

7    were properly captured in the ALJ's limitation to simple work.  See Stubbs-Danielson v. Astrue,

8    539 F.3d 1169, 1174 (9th Cir. 2008).  Substantial evidence supports the ALJ's residual functional

9    capacity assessment and that finding will not be disturbed.  The hypothetical posed by the ALJ to

10   the vocational expert, which included all the limitations incorporated in the ALJ's RFC

11   determination, was complete and properly relied on by the ALJ in determining there were a

12   significant number of jobs available to plaintiff.

13        E.  Third Party Statement - Lay Evidence

14        Plaintiff argues that the ALJ improperly assigned no weight to the third party statement of

15   social worker Lori Thomas.[5]  "[L]ay witness testimony as to a claimant's symptoms or how an

16   impairment affects ability to work is competent evidence, and therefore cannot be disregarded

17   without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v.

18   Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe

19   a plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ

20   wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to

21   each witness."  Dodrill, 12 F.3d at 919; see also Stout v. Commissioner SSA, 454 F.3d 1050,

22   1056 (9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to

23   plaintiff, court cannot consider error to be harmless unless it can confidently conclude no

24   reasonable ALJ, when fully crediting testimony, could have reached different disability

25   determination).

---

26   [5]    As the ALJ correctly noted, a social worker is not considered an "acceptable source" but
27   rather an "other source" of information.  20 C.F.R. §§ 404.1513(a),(e) & 416.913(a), (e).  No
     specific guidelines exist for weighing opinions from "other sources."  Accordingly, opinions from
28   "other sources" are given less weight than opinions from "acceptable medical sources."

1    The ALJ rejected Ms. Thomas' statement because "it is inconsistent with the medical

2  record and contains contradictory statements regarding the claimant's mental limitations."

3  AT 28.  In particular, the ALJ noted that while stating plaintiff was developmentally disabled,

4  Ms. Thomas noted that plaintiff can pay bills, count change, and follow written directions.  Ms.

5  Thomas offered no support in her statement for her conclusory opinion that plaintiff is

6  developmentally disabled.  As discussed above, the medical evidence does not support such a

7  conclusion.  The ALJ's stated reasons for rejecting Ms. Thomas' unsubstantiated statement are

8  germane to this witness.  The ALJ committed no error in according no weight to Ms. Thomas'

9  opinion.

10  <u>CONCLUSION</u>

11    For the reasons stated herein, IT IS HEREBY ORDERED that:

12    1.  Plaintiff's motion for summary judgment (ECF No. 15) is denied;

13    2.  The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted;

14    and,

15    3.  Judgment is entered for the Commissioner.

16  Dated:  November 12, 2013

17  _____
     CAROLYN K. DELANEY
18   UNITED STATES MAGISTRATE JUDGE

19

20  33/4 potts2870.ss

21

22

23

24

25

26

27

28

13